McFarland, J.,
delivered the opinion of the court.
The original bill in this case seeks to enforce the vendor’s lien on a tract of land conveyed by Johnson to Lellyett to collect the balance of unpaid purchase money.
The eross-bill prays for a rescission of the contract upon the ground of false and fraudulent representations made by Johnson, the vendor, to induce Lellyett to *724 make the purchase. Relief was granted upon the cross-bill, and the complainant has appealed.
The trade was finally agreed upon, and the - conveyance executed, on the 25th of December, 1865. One thousand dollars was paid in cash, a note made for seven hundred and ninety-six dollars, payable the 25th of December, 1866, and the remaining six thousand dollars were secured by six notes falling due-annually, for one thousand dollars each, with interest, all secured by a lien retained in the deed.
The . original bill was filed on the 27th of April, 1867, after the first note had fallen due. It prayed for the enforcement of the lien and the appointment of a receiver, charging that the land would not be sufficient security, and that the defendant had failed and refused to make any effort to pay.
■ At the May term, 1867, an order was made showing that defendant had given security for four hundred dollars, payable on the 1st of December, 1868, to be credited on the debt, and had assigned to the complainant a fire policy of insurance upon the house on the premises, as collateral security.
By consent, all further proceedings were stayed until the May term, 1868.
In 1868 a further delay of a year was agreed upon,. the defendant securing and making further payments.
On the 30th of April, 1869, Lellyett filed his answer and cross-bill. The allegations of fraud are, that pending the negotiations Johnson l’epresented to Lelly-ett that a certain lot on the farm where the stable is situated had a never-failing supply of water through *725 -out the summer, which representation was false, the supply of water in said lot having failed every summer since said defendant came into the possession. And again, that Johnson represented that a certain pond contained stock water nine months in the year, whereas it does not contain water at all except in wet weather.
These representations, it is alleged, were material inducements to the purchase.
Johnson’s oath to this answer was waived, but he answered putting these allegations in issue.
The allegations of the cross-bill were sought to be •sustained by proof of a single conversation between the parties, which occurred in the fall or early winter of 1865.
To this conversation, there were three witnesses, the complainant, the defendant, and one Joplin.'
Lellyett, in his testimony, sustains the allegations •of his cross-bill.
Johnson, • in regard to the water in the horse lot, •denies that he said that there was a never-failing supply of water in the horse lot, but says that he had never known the water in the ravine above the horse lot to fail, and that a part of the time it ran through the horse lot.
In this the testimony of Joplin sustains Johnson ■substantially.
Johnson denies the statement imputed to him in regard to the pond.
Joplin’s testimony on this point nearly corresponds with Lellyett’s. It is shown, however, that he re *726 garded the conversation as not particularly worthy of his attention, and that when written to by Johnson, he replied that he did not remember in regard to this-part of the conversation.
There is a large mass of testimony in the record as to the water on the two places on the farm, and thia testimony is in some respects conflicting. The weight of it in' regard to the water at the horse lot seems to be that while Johnson owned the farm the water in the ravine above the horse lot did not fail, but that after Lellyett came into possession it did. That in regard to the pond, it often failed, but how long each year it is impossible to say.
The negotiations for the trade were -pending for some months. Lellyett was cautions and proceeded deliberately. We are unable to see that Johnson pressed the trade 'upon him. At most, Johnson only undertook to represent the condition of the farm as. to water while he owned it.
We are not' satisfied that it is shown by the weight of proof that these representations were false.
Beside, Lellyett,. after seeing the water fail one year, made terms after the bill was filed, for .the delay of a further year, by securing a part of the payment, which he afterward made; and then, having held possession for another year and witnessed another failure, he again made a similar arrangement and another payment, and held possession for still another year, and filed his . cross-bill only on the 30th of April, 1869, more than three years after he obtained possession, and more than two years after the bill -was filed.
*727 He makes a very earnest effort in his testimony to avoid the effect of these acts, and gives reasons for his delay, which are very plausible, but we think not sufficient.
They are, in substance, that he was poor and embarrassed, that he did not know his rights or that he could prove the facts, that he was compelled to make these terms or be put out of possession, and that he thought best to test the failure of the water further' before resorting to a lawsuit.
Without elaboration, we are satisfied that this has proved to be an unfortunate and ruinous transaction to Lellyett, and that it is now a cause of hardship to his widow and child, he having died pending the litigation; but it is not a case of fraud on the part of Johnson, or a case for a rescission.
We cannot bend what we regard as sound and well settled principles of ’ law to meet the hardship of the particular case.
The evidence of fraud or misrepresentation is not sufficient; and beside, the defendant, after he had a knowledge of what he charges was the fraud,’ proceeded to execute the contract and to enjoy its benefits.
The case of Knuckolls v. Lea, 10 Hum., 577, is conclusive upon this point. ,
We regret to differ with the learned Chancellor in a case involving so largely questions of fact. But we are constrained to reverse his decree and dismiss ’the cross-bill and to grant the relief sought by the original bill.